**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHER DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **STACY ERNST, DAWN HOARD,** ) | |
| **IRENE RES PULLANO, MICHELLE** ) | |
| **LAHALIH and KATHERINE KEAN,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **Case No. 08 C 4370** |
| v. ) | |
| ) | **Judge Norgle** |
| **CITY OF CHICAGO,** ) | |
| ) | **Magistrate Judge Jeffrey Cole** |
| **Defendant.** ) | |

**MEMORANDUM OPINION AND ORDER**

The plaintiffs are five women who applied for paramedic positions with the Chicago Fire Department ("CFD") beginning in 2004. All five met the requirements for hire and were placed on the hiring eligibility list. Each took the CFD's physical ability test (PAT) and were informed they did not pass and, as a result, were removed from the hiring eligibility list. Each filed charges with the Equal Employment Opportunity Commission and Illinois Department of Human Rights and, subsequently, joined in this lawsuit against the City on August 1, 2008. Plaintiffs' complaint alleges that the PAT adversely impacts female applicants, is not job-related for the paramedic position, and violates Title VII of the Civil Rights Act of 1964 ("Title VII"); 42 U.S.C. §§ 2000(e) *et seq*.

This case, as one can see from the preceding paragraph, is not a patent case. Nor is it an anti-trust case. It's not a terribly complicated case at all. Yet, given the expert reports – reports, rebuttals, and surrebutals – it certainly is going to appear mind-numbingly complex by the time the attorneys take it in front of a jury. This case is five years old and the parties have been bickering over expert discovery now for nearly three years. [Dkt. # 75]. Of the 222 docket entries, over 40% have been devoted to expert discovery squabbles. Since those squabbles began, the percentage has

increased to 62%. It would be a real test of physical capabilities to ask CFD applicants to heft all those filings to the courthouse. Sisyphus would count himself lucky he was occupied with his boulder.

The plaintiffs' experts' surrebuttals are the problem here. The City says they aren't surrebuttals at all, but new opinions that ought to have been included in plaintiffs' initial reports and they do not respond to the City's experts rebuttal reports. The plaintiffs complain that the City sat on this for too long. They submitted their surrebuttal reports on February 28, 2013, as required by the court's November 15, 2012 order. [Dkt. # 184]. The City did not raise its objections until May 23, 2013, three months later. The City had even completed the depositions of the two experts, Drs. McArdle and Campion, by that time. While the plaintiffs do not ask that the motion be denied as untimely, they do question how the City can convincingly claim it was prejudiced when it waited so long to complain and even deposed the plaintiffs' experts. (*Plaintiffs' Response*, at 2, 15). But, in the main, the plaintiffs seek to defend their most recent expert submissions as proper surrebuttals.

**I.**

Under Rule 26, rebuttal reports are limited to "the same subject matter" identified in the other party's expert report. Fed.R.Civ.P. 26(a)(2)(D)(ii). "The proper function of rebuttal evidence is to contradict, impeach or defuse the impact of evidence offered by an adverse party." *Peals v. Terre Haute Police Dep't,* 535 F.3d 621, 630 (7th Cir.2008). *See also Butler v. Sears Roebuck & Co.,* No. 06–7023, 2010 WL 2697601, at *1, (N.D.Ill. July 7, 2010). As with a reply brief, a party cannot advance new arguments for the first time in a rebuttal or surrebuttal expert report. *See Hussein v. Oshkosh Motor Truck Co.*, 816 F.2d 348, 360 (7th Cir. 1987)("A reply brief is for replying, not for raising a new ground . . . ."). Experts must limit their reply reports to the scope of the issues raised

in the rebuttal reports. The reply report is not the appropriate vehicle for presenting new opinions. *Sloan Valve Co. v. Zurn Industries, Inc.*, 2013 WL 3147349, 1-2 (N.D.Ill. 2013). In addition, a "party may not offer testimony under the guise of 'rebuttal' only to provide additional support for his case in chief." *Noffsinger v. The Valspar Corp.,* No. 09–916, 2011 WL 9795, at *6 (N.D.Ill. Jan. 3, 2011) (citing *Peals v. Terre Haute Police Dept.,* 535 F.3d 621, 630 (7th Cir.2008)). The reply or surrebuttal is not an opportunity for the correction of any oversights in the party's initial report. *Ironshore Ins. Ltd. v. Western Asset Management Co.*, 2013 WL 2051863, 2 (S.D.N.Y. 2013).

While a rebuttal expert report must address the same subject matter as the report it critiques, limiting its analysis only to those methods proposed by the first expert "'would impose an additional restriction on parties that is not included in the Rules.'" *Deseret Management Corp. v. United States*, 97 Fed.Cl. 272, 274 (Fed.Cl. 2011)(quoting *T.C. Sys. Inc. v. Town of Colonie, N.Y.,* 213 F.Supp.2d 171, 179–80 (N.D.N.Y.2002). So, if they are offered to contradict or rebut the other party's report, an expert may introduce new methods of analysis in a rebuttal report. *Deseret Management*, 97 Fed.Cl. at 274; *In re REMEC Inc. Sec. Litig.,* 702 F.Supp.2d 1202, 1220 (S.D.Cal.2010). Rebuttal reports can use, as well, additional data not found in the expert report, so long as it relates to the same subject matter. *See Kirola v. City & County of S.F.,* 2010 WL 373817, at *2 (N.D.Cal. 2010).

## II.

### A.
### Dr. Campion

The City's main gripe with Dr. Campion's surrebuttal report is that, on the final substantive page – page 51 – he offers what he terms a "new potential alternative" to the City's current physical requirements, namely, "standards on physical fitness." (*Defendant's Motion*, at 5). Dr. Campion

proposes that, rather than a female applicant's physical abilities being assessed without regard to her gender or what might be required in the job, she be assessed on a scale with standards of physical fitness of females only. (*Campion Report of February 28, 2013*, at 51). Other than that, Dr. Campion's report is apparently fine. (*Defendant's Motion*, at 5-8). So, the City is basically asking that one page be stricken and Dr. Campion be barred from testifying on this "new potential alternative." As the City remarks, this little tidbit stands in stark contrast to the balance of his report, which continuously references and critiques the rebuttal report of the City's experts, Drs. Gebhart and Jacobs.

In his original report, Dr. Campion purported to offer a couple of alternatives to PAT. (*Campion Report of March 29, 2012*, at 48-51). Not so much alternative tests, his ideas were to eliminate the physical ability test because it wasn't given before 2000, physical abilities were "trained after hire" and could be tested after training, applicants were licensed paramedics and licensing required demonstration of physical abilities, there were other job requirements that should be tested for, and the job could be made less demanding with ergonomic equipment. (*Id.*). One of Dr. Gebhart's rebuttals to these ideas was they would not address the concern over injuries. Dr. Campion's "new potential alternative" was a response to that. That's fairly clear from his surrebuttal report. (*Campion Report of February 28, 2013*, at 49-51). Essentially, Dr. Gebhart complained that Dr. Campion's "alternatives" would not work because they would not insure against on-the-job injury, so Dr. Campion came up with an alternative that he felt would address that concern. Accordingly, it constitutes proper surrebuttal.

**B.
Dr. McArdle**

4

The City first complains that Dr. McArdle is a "new and different type of expert," so his report can't possibly be considered a surrebuttal. Dr. McArdle has a Ph.D. in exercise physiology, while Drs. Campion and Jacobs have doctoral degrees in industrial psychology, and Dr. Gebhart has advanced degrees in biomechanics, anatomy, and kinesiology. So really Dr. Gebhart is a "new and different type of expert" relative to Drs. Campion and Jacobs – and *vice versa* – as well. But so what? The City cites no case or rule that requires that all the experts in a case be limited to a single field of study. *See Pantaleo v. Hayes*, 2011 WL 2517265, 2 (N.D.Ill. 2011)(experts need not share particular field of expertise); *VSI Holdings, Inc. v. SPX Corp.*, 2004 WL 6047330, 4 (E.D.Mich. 2004). Their sheepskins don't all have to match up. The case the City relies upon for their position says nothing of the kind. *See Talbert v. City of Chicago*, 236 F.R.D. 415 (N.D.Ill. 2005). The question is whether the "new and different type of expert" is offering proper surrebuttal or an opinion "that threaten[s] to belatedly send the case on a wholly different tack . . . ." 236 F.R.D. at 424. A different set of eyes with different training does not necessarily do that. The City's argument seems to be nothing more than a woefully undeveloped *Daubert* challenge to Dr. McArdle's qualifications. And, as the Seventh Circuit has repeatedly held, perfunctory and undeveloped arguments are deemed waived. *ADT Sec. Services, Inc. v. Lisle-Woodridge Fire Protection Dist.*, – F.3d –, –, 2013 WL 3927716, 18 (7th Cir. 2013); *United States v. Berkowitz,* 927 F.2d 1376, 1384 (7th Cir.1991).

The City continues, arguing that Dr. McArdle does not offer a response to its experts' rebuttals, but instead merely provides a new critique of the PAT. Certainly, that is the very impression Dr. McArdle gives in his own description of his report:

> The following provides my professional opinion concerning the PAT as prepared by the City's contractor and used by the City, its failure to provide proper notification

>to candidates of specific test items and scoring requirements, including its failure to provide notification to candidates of test requirements within a time frame to adequately train for the exam, its misclassification as to the physiologic and metabolic demands of the test items, its failure to provide adequate information to candidates as to the proper and most effective way to prepare for the PAT, and its failure to provide opportunities for candidates to view and practice the actual PAT within a sufficient time frame so as to optimize pre-test exercise training.

(*McArdle Report*, at 5). Dr. McArdle gives every indication that he agrees with the City. He himself says he is assessing the PAT, not the rebuttals of the City's experts.

It's truly a struggle to correlate Dr. McArdle's report with that of Dr. Gebhart or Dr. Jacobs. Dr. McArdle references Dr. Gebhart's report on a single occasion in his 20-page document. (*McArdle Report*, at 17). He mentions Dr. Jacobs' opinion once. (*McArdle Report*, at 15). Indeed, Dr. McArdle's purported surrebuttal of the City's two experts is so elusive that the plaintiffs had to devise a 15-page, two-columned, single-spaced chart in order to wedge Dr. McArdle's submission into some semblance of a surrebuttal. (Pl. Ex. 1). If an expert truly were to respond to another expert's report, the obvious thing to do – and the most useful thing for a jury or a judge – would be to address that expert's points, either in sequence or by identifying them and critiquing them. As it is often said in this circuit, judges are not like pigs, hunting for truffles in briefs. *Gutierrez v. Kermon*, – F.3d –, –, 2013 WL 3481359, 9 (7th Cir. 2013); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). Nor, as is the case here, should a party expect them to play a game of concentration, pouring over expert reports in order to match up points made in one with comments made in another.

If, on the other hand, an expert simply wanted to smuggle new opinions into what the plaintiffs term a surrebuttal – Dr. McArdle describes it otherwise – it would seem that the most obvious thing to do is what Dr. McArdle has done. It may be the case, as the plaintiffs explain, an

6

expert's surrebuttal report need not follow any particular format, *see Pantaleo*, 2011 WL 2517265, 2 (rebuttal expert need not refer to adverse party's reports), but it is foolhardy for it not to and invites just the sort of challenge the City levels here. It also demands just the type of contortions the plaintiffs have gone through to rehabilitate and explain it. Worst of all, it requires painstaking comparison and scrutiny from the judge in order to determine its appropriateness. *See Dal Pozzo v. Basic Machinery Co., Inc.*, 463 F.3d 609, 613-14 (7th Cir. 2006)("An advocate's job is to make it easy for the court to rule in his client's favor . . . .").

In the main, Dr. Gebhart's rebuttal report addressed the alternatives to the PAT that Dr. Campion offered on behalf of the plaintiffs. (*Gebhart Report of September 17, 2012*, at 8-12). He also responded to Dr. Campion's criticism of the PAT's validation approach, determination of passing score, and test administration. (*Gebhart Report of September 17, 2012*, at 2-5, 7). Dr. Jacobs reviewed, at length, Dr. Gebhart's construction and development of the PAT. (*Jacobs Report of September 17, 2012*, at 2-16). He then discussed and critiqued Dr. Campion's thoughts on the adverse impact of the PAT on females, his problems with Dr. Gebhart's job analysis, his critique of Dr. Gebhart's selection of test components, and his comments on Dr. Gebhart's explanation of test validation and treatment of test alternatives. (*Jacobs Report of September 17, 2012*, at 16-30).

The City's main problem with Dr. McArdle is his focus on the PAT: his critique of the original validation study, the administration of the test, and the PAT brochure. (*Defendant's Motion*, at 10-13). Both reports from the City's experts – unlike Dr. McArdle's report – are easy to recognize as rebuttals. But Dr. Jacobs' report does go quite a bit further than mere rebuttal and is much broader than a critique of Dr. Campion's report might be expected to be. His lengthy, in-depth discussion of the development and validation study of the PAT opens the door for what the City

7

finds objectionable in Dr. McArdle's report.

### C.

Finally, there is the fact that the City had the reports on February 28, 2013, and did not deem them objectionable until May 23, 2013. Incredibly, the City claims it had no time to review Dr. McArdle's report. Three months is plenty of time. The City was even able to depose Dr. McArdle about the report. The City offers no credible explanation for its delay, and that delay suggests that the prejudice of which the City complains is rather exaggerated to say the least. *See In re Sulfuric Acid Antitrust Litigation*, 235 F.R.D. 646, 651 (N.D.Ill. 2006)("If the defendants felt they were prejudiced by the belated disclosure of Dr. Tollison's report, it is doubtful that they would have gone ahead with the deposition instead of filing a motion to bar."). In any event, there was no real prejudice here because the plaintiffs' surrebuttal reports – while not the model of organization – are, at least arguably, proper surrebuttal.

### CONCLUSION

For the foregoing reasons, the defendants' motion the strike the plaintiffs' expert reports and bar the experts from testifying [Dkt. #207] is DENIED.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 9/9/13