**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| STACY ERNST, DAWN HOARD, IRENE RES-PULLANO, MICHELLE LAHALIH, and KATHERINE KEAN,<br><br>*Plaintiffs*,<br><br>v.<br><br>CITY OF CHICAGO,<br><br>*Defendant*. | Case No.: 08 C 4370<br><br>Judge Charles R. Norgle, Sr.<br><br>Magistrate Judge Jeffrey Cole |

**DEFENDANT'S OPPOSITION TO
PLAINTIFFS' MOTION TO BAR WITNESSES AND EXHIBITS**

Plaintiffs' Motion to Bar, Dkt. 342, is riddled with inaccurate, incomplete and misleading information. The City of Chicago (the "City") submits this response to fully apprise the Court of the facts and to set the record straight.

## I. Witnesses

Plaintiffs claim that they have been unfairly surprised by certain witnesses identified on the City's proposed witness list. If Plaintiffs are surprised, it is only because they failed to consult the record. The City disclosed all of its witnesses in accordance with Rule 26.

Moreover, even if the disclosure of witnesses and documents was deemed untimely, such delays were harmless to Plaintiffs. Federal Rule of Civil Procedure 37(c) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." The offending party must justify its non-disclosure. *See McGill v. Menards, Inc.*, No. 11-cv-4950, 2013 WL 5253650, at *8 (N.D. Ill. Sept. 17, 2013) (denying motion to bar witnesses where party failed to supplement its Rule 26(a)

disclosures with individuals known to be potential witnesses and noting "any failure [to supplement] would be harmless because all of the witnesses have been deposed."); *Wells v. Berger, Newmark & Fenchel, P.C.*, No. 07-cv-3061, 2008 WL 4365972, at *2-*3 (N.D. Ill. Mar. 18, 2008) (denying defendant's motion to exclude an untimely disclosed witness where the identify and relevance of the witness was made known to the defendant during a deposition and further permitting three other trial witnesses to testify where their identity was disclosed in the discovery period, and where the defendant was aware of their identities even before the litigation began. "[I]t was incumbent on [the defendant] to exercise its own independent judgment about the significance of the witnesses and their relationship to the case.").

Here, the identities of these witnesses were not only disclosed in accordance with Rule 26, they were also made available to Plaintiffs during the course of discovery. Plaintiffs had ample opportunity to depose and in some cases did depose the witnesses in question, and the individuals' potential relevance was apparent.

A. Todd Baker.

Plaintiffs claim that Dr. Todd Baker, a colleague of Dr. Gebhardt at Human Performance Systems, Inc. ("HPS"), assisted Dr. Gebhardt in developing and validating the paramedic physical abilities test ("PAT") at issue in this case. Plaintiffs' assertion that Dr. Baker was not disclosed as a possible witness until September 29, 2010 (Pls' Motion, Dkt. 342, p.7) is false. Dr. Baker was disclosed as a witness in the City's Rule 26(a)(1) Disclosures, served on Plaintiffs on March 11, 2009, with knowledge of "Development of Physical Abilities Test for 2004 Chicago Fire Department Paramedic Exam." A copy of the City's Rule 26(a)(1) Disclosures is attached as Exhibit 1. Moreover, the City identified "the individuals who were proctors during the EMS Physical Abilities Test administered on August 10-13, 2004" as persons with knowledge of the test and its administration in its Second Supplemental Answers to Ms. Ernst's

First Set of Interrogatories, served on March 22, 2010, copy attached as Exhibit 2. The City's records show that a list of these proctors, *including Dr. Baker*, was produced to Plaintiffs on April 9, 2010, as Bates ERN003384, copy attached as Exhibit 3. Further, Dr. Baker is listed as the co-author of the Validation Study at issue in this lawsuit. Plaintiffs' claim of late disclosure as to Dr. Baker is thus confirmed as false.[1]

### B. Pat Graham and Rhonda Vandecoevering.

The administration of the PAT was an issue raised in the Complaint. *See* Dkt. 1, ¶¶ 13(b), (c)(i) and (ii). Pat Graham and Rhonda Vandecoevering were proctors who monitored and administered the PAT in 2004. Just as with Dr. Baker, they, as proctors, were identified as persons with knowledge in the City's Second Supplemental Answers to Ms. Ernst's First Set of Interrogatories, Exhibit 2 hereto, and also were on the list of proctors identified on ERN003384, produced on April 9, 2010, Exhibit 3 hereto. Again, Plaintiffs' claim of unfair surprise and that these individuals were not disclosed during discovery is not accurate.

### C. Leslee Stein-Spencer.

Plaintiffs' claim of unfair surprise with regard to Ms. Stein-Spencer, R.N., is disingenuous, as they deposed her, without limit by the City or by the Court. Now, they assert that they had no knowledge of the topics on which the City may elicit testimony from Ms. Stein-Spencer at trial. This is a concession that Plaintiffs' issue with Ms. Stein-Spencer has nothing to do with nondisclosure. This assertion is also not accurate. Ms. Stein-Spencer testified that she was the Chief of Emergency Medical Services for the State of Illinois from 1986 – 2004. Deposition of Ms. Stein-Spencer ("Stein-Spencer Dep.") pp. 9:19 – 10:3. A copy of relevant pages of Ms. Stein-Spencer's deposition is attached as Exhibit 4. Her duties and responsibilities

---

[1] Plaintiffs make the broad statement that the City "earlier stated it would not call Dr. Baker as a witness," Motion, Dkt. 372, p. 8, but this too is an untrue statement made without support.

in that position included not only paramedic licensing but training, continuing education, approving EMS and trauma centers, quality control, and site surveys. *Id.*, p. 10:9-22. As state-wide chief, she visited at least 200 facilities, public and private, to determine the type of runs they have in the area. *Id.*, p. 69:3-9; 70:15-23. Moreover, she was asked about whether 911 services were ever provided by private ambulance companies. *Id.*, p.71:21 – 72:3. Thus, Plaintiffs have been fully on notice since Ms. Stein-Spencer's deposition on August 13, 2012, of the extent of her knowledge of the duties, responsibilities and demands of the paramedic position around the State as well as with the Chicago Fire Department ("CFD"), where she currently is employed. Accordingly, they cannot claim any unfair surprise or unfair prejudice from Ms. Stein-Spencer's testimony at trial. Thus, Ms. Stein-Spencer's trial testimony should not be barred or limited.

      D.      **Mark Kiely**

Plaintiffs' objection to Mark Kiely fails for the same reason as their objection to Ms. Stein-Spencer: they deposed Mr. Kiely, no limits were placed on the subject of his deposition, and he answered all questions. In particular, Mr. Kiely was questioned concerning transporting a patient in an ambulance in a stair chair, deposition of Mark Kiely ("Kiely Dep.") p. 59:19 - 61:12; a paramedic's actions in the event of an emergency, *id.*, p. 80:5-20; patients being lifted out of an ambulance in a stair chair and transported to a hospital on a stair chair, *id.*, p. 81:4 – 24; and his work for a private ambulance company prior to working for the CFD, p. 86:11 – 23. Once again, there is no basis for any claim of unfair surprise or prejudice with regard to Mr. Kiely, and Plaintiffs' motion to bar Mr. Kiely's testimony should be denied.

      E.      **Renee Gardner and Steve Swanson.**

Plaintiffs' assertion that Ms. Gardner and Steve Swanson were not disclosed is once again untrue. This Court ordered the City to identify the individuals who provided training cost

data to the City's experts. Dkt. 172, ¶ 7. In an email dated September 18, 2012, from Mr. Swabb to Ms. Malone, the City complied and identified Ms. Gardner as the individual who calculated training costs as of 2004 and Mr. Swanson as the person who calculated those costs as of 2011. A copy of Mr. Swabb's September 18, 2012 email is attached as <u>Exhibit 5</u>. Plaintiffs thus had ample time to take their depositions. They never attempted to do so, even though the City was prepared to present Ms. Gardner and Mr. Swanson, as it did with Ms. Stein-Spencer and Mr. Kiely late in 2012. As Ms. Gardner and Mr. Swanson were disclosed in ample time for Plaintiffs to depose them, Plaintiffs cannot show either surprise or unfair prejudice if Ms. Gardner and/or Mr. Swanson testify at trial.

**F. Mark Hong, Jennifer Bruckner, Cortney Phillips and Catherine Skelly.**

Each of these individuals is a potential rebuttal witness with regard to Plaintiffs' case-in-chief concerning the duties of CFD paramedics. These individuals were in fact identified in discovery. Mr. Hong was identified based on Ms. Malone's questioning in the May 20, 2010 deposition of Chief Charles Stewart as the Assistant Deputy Chief Paramedic. *See* Deposition of Charles Stewart, May 20, 2010, p. 125:1 – 9. A copy of relevant pages of Chief Stewart's May 20, 2010 deposition is attached as <u>Exhibit 6</u>. Ms. Phillips, Ms. Skelly, and Ms. Bruckner are current CFD firefighter/EMTs who passed the PAT in 2004, were hired as paramedics and subsequently "crossed over" to become firefighter/EMTs. One or more of these individuals may be called as a rebuttal witness depending on the substance of Plaintiffs' anticipated testimony concerning the 2004 administration of the PAT and the job requirements of the PAT. As potential rebuttal witnesses, these individuals were identified as a courtesy. The fact that these three individuals are listed on Plaintiffs' Exhibit 45, which they describe as "hiring history for

5

2004 applicants," shows that Plaintiffs should not be surprised by rebuttal testimony coming from these individuals.[2]

## II. Plaintiffs' Claim of Nondisclosure of Documents Fails.[3]

Plaintiffs generally object to City exhibits based on ERN18495-18889 as being late disclosures (Motion, p.8). They do not, however, differentiate between these documents in the text of their Motion. Accordingly, the City explains each group of documents and why Plaintiffs' objections based on alleged late disclosure fail.

### A. Uniform Strength Reports.

Documents ERN18495-18528 are Uniform Strength Reports of the Chicago Fire Department for the years 1996-2006. These are business records of the City and show, among other things, the number of paramedics, broken down by race and gender, for each year. In particular, they demonstrate that the percentage of CFD female paramedics stayed relatively constant, and if anything, rose slightly, after the PAT was instituted in 2000.

These documents were not disclosed late, because never were the subject of a discovery request by Plaintiffs. Attached hereto as <u>Exhibit 7</u> are copies of all of Plaintiffs' various document requests. None of these requests seek the number of CFD paramedics by year, the breakdown of CFD paramedics by gender, or any similar information. Since Plaintiffs never requested these documents, or documents containing such information, there is no late disclosure. Nor have Plaintiffs shown any unfair prejudice from City business records that they did not seek in discovery. Moreover, these documents could be introduced as rebuttal to

---

[2] The City withdraws Jenine Gollogy and Arthur Harris as "may call" witnesses. Mr. Harris photographed the PAT equipment on January 29, 2014. His purpose was to establish a foundation for the photographs of the PAT equipment. However, as Dr. Baker was present for the photography session and set the equipment up, he can lay an appropriate foundation for those photographs.
[3] Documents ERN18529-18663 are transcripts of proceedings concerning the duty disability claim of Plaintiffs' witness Alicia Brown. These contain Ms. Brown's sworn testimony. They are not marked as City exhibits, but the City may use these transcripts for impeachment purposes. The City provided the transcripts in advance to Plaintiffs' counsel as a professional courtesy.

Plaintiffs' contention that the City intentionally discriminated against the Plaintiffs on the basis of their gender by instituting the PAT. Accordingly, the City's Trial Exhibit 59, Bates ERN18495-18528, and Exhibit 58, a Federal Rule of Evidence 1006 Summary prepared using the Uniform Strength Reports, should be allowed as evidence at trial.

### B. Summary of Physical Abilities Test Scores From 2000-2009.

Trial Exhibit 60, Bates ERN18860-18889, is a summary of the paramedic physical abilities test scores from 2000-2009. The foundation for this Rule 1006 summary is found in City Trial Exhibits 61-66, ERN1409-1897 (2000 and 2001); ERN561-565, ERN3127-3379, ERN3409-3617 (2004); ERN981-1183 (2005); ERN889-980 (2008); and ERN835-880 (2009), which contain the actual PAT score sheets for all candidates who took the PAT in 2000, 2001, 2004, 2005, 2008 and 2009. These PAT score sheets were produced long ago. Thus, there is no unfair surprise as to their content. Notably, Plaintiffs do not object to the foundation documents, and a summary of these documents will be far more useful to the trier of fact than hundreds of pages of individual score sheets. Accordingly, Plaintiffs' objection to Trial Exhibit 60, Bates ERN1860-1889 should be overruled.

### C. CFD Contract with Braun For Delivery of Ambulances, December 1, 2005, ERN18667-18828, City Exhibit 71.

One of the contested issues raised by Plaintiffs is whether ergonomic equipment could have been used to alleviate the need for a PAT. Plaintiffs and their experts have long argued that one piece of ergonomic equipment that the City should have obtained are Stryker stretchers. In December 2013, Plaintiffs produced to the City a document entitled "Justification for Non-Competitive Procurement" for maintenance and repair of Ferno Washington & Stryker stretchers and have identified this document as Exhibit 15 in their Amended Pre-Trial Order. The document states "that in 2004/2005 the Chicago Fire Department began purchasing Stryker

stretchers as part of a new ambulance purchase." The City's proposed Exhibit 71 simply memorializes the "new ambulance purchase" referenced in Plaintiffs' Exhibit 15. In particular, on page 97 of the lengthy Braun contract, there is a bid line for Stryker stretchers. Once again, there is no unfair surprise or prejudice to Plaintiffs from this contract, which is a City business record and responds to and clarifies the document Plaintiffs produced in December 2013, and placed on their trial exhibit list.

### D. Updated Curriculum Vitae of Dr. Deborah Gebhardt, Bates 18851-18858.

The City produced an updated curriculum vitae ("CV") of Dr. Deborah Gebhardt, one of its experts and a principal City fact witness, that updated the CV previously disclosed in discovery. Plaintiffs' objection that the updated CV is a late disclosure makes no sense. First, the updated CV is a proper Rule 26 supplement. Second, there is no prejudice to Plaintiffs as they have long known Dr. Gebhardt was identified as an expert and have deposed her for four days regarding her background as well as regarding her work in developing and validating the PAT. Third, it is common practice for an expert to provide an updated CV for purposes of trial testimony. Fourth, any questions concerning recent projects of HPS and Dr. Gebhardt can be addressed during *voir dire* at trial. Accordingly, Plaintiffs' objection to City Exhibit 1, Bates 18851-58 should be overruled.

### E. Photographs of Physical Abilities Test Equipment.

Plaintiffs claim that the City delivered photographs of the equipment used in the paramedic PAT at the "eleventh hour," and "without justification." (Motion, p. 5) This assertion misstates the actual circumstances. Plaintiffs never asked to inspect or photograph the PAT equipment during discovery, although it has been at issue from day one. However, for several weeks, if not months, the Plaintiffs have argued that the PAT equipment itself should be transported to the courtroom during trial as demonstrative exhibits, and the City has objected to

8

this cumbersome procedure.[4] On January 21, 2014, Mr. Donham, one of the City's counsel, emailed Plaintiffs' counsel offering, as a compromise, a joint photo session of the PAT equipment at the Fire Academy South on Wednesday, January 29, 2014. A copy of this email is attached as <u>Exhibit 8</u>. On January 22, 2014, Plaintiffs' counsel wrote the City's counsel, rejecting the joint photography session and stating that "[w]e therefore do not see how the City now contends that still photographs staged by the City and its former vendor would be useful or sufficient." A copy of Plaintiffs' counsels' January 22, 2014 letter is attached as <u>Exhibit 9</u>. The City promptly provided copies of all photographs taken during the session to Plaintiffs. Thus, the assertion the City offers no justification for its production of these photographs is not accurate, and Plaintiffs' failure to seek discovery concerning the PAT equipment shows that the City had no prior reason to produce photographs of the PAT equipment. Moreover, Plaintiffs identify no unfair prejudice or surprise if these photographs are properly authenticated and are shown to the trier of fact.

**F.     Individuals Separated Since January 1990 While In Class Paramedics.**

In the body of their motion to bar, Plaintiffs voice no specific objection to this document. This document will be offered for rebuttal purposes if any witness of Plaintiffs makes an assertion that no paramedic ever dropped out of the academy during the initial training. Again, the City has provided this potential rebuttal exhibit to Plaintiffs in advance as a courtesy.

<u>**Conclusion**</u>

Plaintiffs' Motion to Bar is simply without basis. As described above, the City previously disclosed all the witnesses and evidence Plaintiffs seek to bar and did not violate Fed. R. Civ. P. 26 and 37. All of the witnesses were disclosed long ago and in ample time for Plaintiffs to depose them, had they so chosen. Further, the documents Plaintiffs claim were late

---

[4] The City's Motion in *Limine* Number 3 addresses this issue in detail.

produced were not requested in discovery, are supplements to previous discovery, are Rule 1006 summaries of identified trial exhibits, or are potential rebuttal or impeachment documents. For all these reasons, Plaintiffs' Motion to Bar should be denied.

Dated: February 18, 2014

| Respectfully submitted,<br>**THE CITY OF CHICAGO** | Respectfully submitted,<br>**STEPHEN R. PATTON,**<br>Corporation Counsel, the City of Chicago |
|---|---|
| By:   s/ Cary E. Donham | By:   s/ Timothy Swabb |
| Allan T. Slagel (ARDC No. 6198470)<br>aslagel@taftlaw.com<br>Cary E. Donham (ARDC No. 6199385)<br>cdonham@taftlaw.com<br>John F. Kennedy (ARDC No. 6196185)<br>jkennedy@taftlaw.com<br>Rachel L. Schaller (ARDC No. 6306921)<br>rschaller@taftlaw.com<br>TAFT STETTINIUS & HOLLISTER LLP<br>111 East Wacker Drive, Suite 2800<br>Chicago, Illinois 60601<br>Telephone:  (312) 527-4000 | Timothy Swabb (ARDC No. 6193885)<br>Timothy.Swabb@cityofchicago.org<br>Alison Alvarez (ARDC No. 6281295)<br>alison.alvarez@cityofchicago.org<br>Assistants Corporation Counsel<br>30 N. LaSalle Street, Suite 1020<br>Chicago, IL 60602<br>312-744-8369 |

1267414_5.DOCX