IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STACY ERNST, DAWN HOARD, IRENE RES-PULLANO, MICHELLE LAHALIH, and KATHERINE KEAN, *Plaintiffs*, v. CITY OF CHICAGO, *Defendant*. | Case No.: 08 C 4370 Judge Charles R. Norgle, Sr. Magistrate Judge Jeffrey Cole |

**THE CITY OF CHICAGO'S OBJECTION TO THE ORDER
DENYING THE CITY'S *DAUBERT* MOTION
TO BAR THE TESTIMONY OF DR. WILLIAM McARDLE**

The Magistrate Judge denied the City's motion to bar the Plaintiffs' sur-rebuttal expert, Dr. William McArdle, based on *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *See* Mem. Op. and Order dated May 5, 2014, Dkt. 419 ("Opinion"). The Magistrate Judge determined that the deficiencies in Dr. McArdle's report could be cured by "rigorous cross-examination." Op. at 8. This determination abdicates the "gatekeeper" role imposed by *Daubert*. Allowing opinion testimony like that of Dr. McArdle, whose conclusions are either based on insufficient facts or data, as required by Fed. R. Evid. 702(b), or are not linked to relevant facts and data by a reliable methodology, as required by Fed. R. Evid. 702(d), may cause jury confusion and invite the harm into the proceedings that *Daubert* intended to present.

**A.  Standard of Review**

Federal Rule of Civil Procedure 72 governs objections to rulings by a magistrate judge. Rule 72 provides that a district judge must review "de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). A district judge must

modify or set aside rulings on nondispositive matters that are "clearly erroneous or . . . contrary to law." Fed. R. Civ. P. 72(a).

Here, a *de novo* review is appropriate, as the rulings on the *Daubert* motions were, as the parties recognized, dispositive of Plaintiffs' case. During the hearing on the *Daubert* motions, the Magistrate Judge raised the issue of whether, if the City's *Daubert* motions were granted, Plaintiffs would be able to successfully present their case. Specifically, the Magistrate Judge inquired of the City's counsel, "Mr. Donham, if I were to grant your [*Daubert*] motions, both of them, I assume the case is over?" Pretrial Tr. Feb. 28, 2014, A.M. at 26:14 – 26:15. A copy of relevant pages of the Pretrial Conference is attached as <u>Exhibit A</u>. The City agreed that, if the *Daubert* motions were granted, Plaintiffs' case was effectively over. The Magistrate Judge then asked counsel for Plaintiffs "If this [*Daubert*] motion were to be granted, do you – can you proceed?" <u>Exhibit A</u> at 34:16 – 34:17. Similarly, counsel for Plaintiffs indicated they "would be severely disadvantaged" and would be left with only the ability to cross-examine the City's experts, something the Magistrate Judge did not believe Plaintiffs could successfully do. *Id.* at 34:18 – 35:19. Accordingly, as the Magistrate Judge acknowledged that the rulings on the City's *Daubert* motions were dispositive, *de novo* review of the Magistrate Judge's rulings is appropriate.

Moreover, *de novo* review is proper where a court is determining if the *Daubert* framework was properly followed, in the first instance, by the court below. For example, in *Fuesting v. Zimmer, Inc.*, the Seventh Circuit reversed a jury verdict in favor of the plaintiff where it found that the district court had failed to conduct a proper *Daubert* analysis of the plaintiff's expert's testimony. *Fuesting v. Zimmer*, 421 F.3d 528, 531 (7th Cir. 2005), *vacated in part on other grounds* 448 F.3d 936 (7th Cir. 2006) (vacating the order directing the district court

to enter judgment in favor of the defendant and instead directing the district court to grant the defendant a new trial). Applying a *de novo* review of whether the district court properly followed the framework set forth in *Daubert*, *id.* at 534, the *Fuesting* court found that "[a]lthough the district court offered a relatively lengthy discussion of [the expert] Pugh's credentials, the court's *Daubert* factor analysis was not sufficient." *Id.* at 535. The Seventh Circuit noted that simply possessing the requisite credentials, alone, does not render expert testimony admissible. Rather, the district court must also analyze the reliability of the expert's methodology. *Id.* The court found that the district court's reference to Pugh's deposition and report as discussing Pugh's analysis at length did not pass muster under *Daubert*: "[t]o satisfy its essential role, the gatekeeper must do more than just make conclusory statements." *Id.*

Furthermore, even under a clearly erroneous standard, the Magistrate Judge's ruling that the expert employed a reliable methodology under Fed. R. Evid. 702 fails. "Whereas a magistrate judge's factual findings are reviewed under the clear error standard, judges in this district conduct a 'full review' of a magistrate judge's conclusions of law." *Peerless Indus., Inc. v. Crimson AV LLC*, No. 11-cv-1768, 2013 WL 6050006, at *2 (N.D. Ill. Nov. 14, 2013) (Lefkow, J.) (internal citation omitted). Here, Magistrate Judge Cole's rulings fail under both a *de novo* and a clearly erroneous standard of review.

**B.     The Magistrate Judge's Conclusion That Dr. McArdle Used a Reliable Methodology Fails under Either a Clearly Erroneous or de Novo Standard of Review.**

The Magistrate Judge's Order denying the City's *Daubert* motion suffers the same factual flaws as the district court order in *Fuesting*. Although the Magistrate Judge correctly observed that the gatekeeper role requires a trial court to question "the reliability of the methodology employed by an expert," Op. at 3, he failed to adhere to this principle.

3

The Magistrate Judge states that Dr. McArdle read deposition transcripts and other expert reports in this case, and thus "based his findings on case-specific materials." *Id.* at 7. While that may address whether Dr. McArdle had sufficient facts or data on which to base his opinions – in fact, as discussed below, he did not in at least one instance – the Magistrate Judge did not consider the methodology Dr. McArdle employed, or analyze whether the methodology was reliable. The Magistrate Judge acknowledged that Dr. McArdle did not follow the methodology he used 30 years ago in studies in Queens, New York; Buffalo, New York; Erie, Pennsylvania; and St. Paul, Minnesota, where he designed physical training programs for women candidates for sanitation worker and firefighter positions, respectively. *Id.* at 7. Nonetheless, he ruled that Dr. McArdle's prior methodology was not "canonical" and Dr. McArdle was not bound to follow it in this case. *Id.* Yet, under *Daubert* and Rule 702, Dr. McArdle was required to use *some* acceptable methodology. Neither the Magistrate Judge nor Dr. McArdle, however, articulated any methodology Dr. McArdle may have used. "[T]he district court is responsible for making sure that when scientists testify in court they adhere to the same standards of intellectual rigor that are demanded in their professional work." *Braun v. Lorillard Inc.*, 84 F.3d 230, 234-35 (7th Cir. 1996) (affirming the exclusion of an expert's testimony where "his speculations lack the authority of science").

Instead, the Magistrate Judge conflated Dr. McArdle's credentials and experience with his methodology. In doing so, the Magistrate Judge clearly erred. As the Seventh Circuit explained in *Fuesting, Daubert* requires more from a district court acting as *Daubert* gatekeeper. *Fuesting*, 421 F.3d at 535; *see also Padilla v. Hunter Douglas Window Coverings, Inc.*, No. 09 CV 1222, 2014 WL 502171, at *6 (N.D. Ill. Feb. 6, 2014) (Lee, J.) (barring the testimony of an expert where his "methodology consisted only of reviewing some government publications, a

limited collection of documents from this case, and declaring his opinions relying upon nothing but his 'extensive' professional experience"), attached hereto as Exhibit B.

The Magistrate Judge also erroneously concluded that Dr. McArdle's opinions were not *ipse dixit*, because "he linked his assertion to what he has seen and experienced in his work in the field over the years." Op. at 9. Experience alone, however, is not the test:

> If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.

Fed. R. Evid. 702 (2000 Advisory Committee Notes). *See Chapman v. Maytag Corp.*, 297 F.3d 682, 688 (7th Cir. 2002) (holding the district court erred in failing to exclude an expert's testimony and providing "Personal observation is not a substitute for scientific methodology and is insufficient to satisfy *Daubert'*s most significant guidepost."); *Amari Co. Inc. v. Burgess*, No. 07 C 1425, 2012 WL 5389787, at *16 (N.D. Ill. Nov. 2, 2012) (Tharp, J.) (excluding expert report because it was ". . . lacking [] a reliable methodology, reliably applied—extrapolating from personal experience is not an objective or replicable methodology."), attached hereto as Exhibit C. The record is also silent as to how Dr. McArdle reliably applied his experience to the facts of this case. Thus Dr. McArdle's opinions suffer the same fatal defect as the opinions excluded in *Chapman* and *Amari*. "The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" *Sloan Valve Co. v. Zurn Indus., Inc.*, No. 10-cv-00204, 2014 WL 806452, at *2 (N.D. Ill. Feb. 28, 2014) (St. Eve, J.) (quoting Fed. R. Evid. 702 Advisory Committee Notes and excluding expert testimony), attached hereto as Exhibit D.

Further, the Magistrate Judge relied on *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748 (7th Cir. 2010) as support for allowing Dr. McArdle to testify. Op. at 9. *Metavante* is distinguishable in several ways. First, it is significant that the Seventh Circuit found that the

5

district court had failed to perform a *Daubert* analysis. *Metavante*, 619 F.3d at 760. Additionally, it appears that the Seventh Circuit's *Daubert* analysis took into consideration that the case below was a bench trial, and thus the usual concern of *Daubert*, keeping unreliable expert testimony from the jury, was not present. *Id.* In contrast, this case will require a jury to consider complicated issues of physical abilities test validation in a public safety setting. Moreover, the ruling that the expert in *Metavante* could testify focused on whether the expert's experience was a sufficient basis for his testimony, and did not specifically address the expert's methodology, which is the primary concern of Dr. McArdle's proposed testimony. *Id.* at 761-62.

The Magistrate Judge's failure to exclude Dr. McArdle led to other errors. For example, the Magistrate Judge stated that "the City's own experts did not follow the so-called 'canonical' method of going on ride-alongs." Op. at 7. This statement is not supported by the record. The HPS Validation study reports the results of numerous ride-alongs that permitted the City's expert, Dr. Gebhardt, as well as Dr. Baker and their team to observe first-hand Chicago Fire Department ("CFD") paramedics in action, including being present while paramedics carried a 200 plus pound woman down narrow stairs. *See* Ex. 1 of City's Mem. in Support of Mot. to Exclude Dr. McArdle, Dkt. 276-1 at PageID2833; *see also* Appendix A to HPS Validation Study, received into evidence as City Trial Exhibit 37A, copy attached as Exhibit E. In addition, the Magistrate Judge speculated that Dr. McArdle's "methodology" employed in this case was acceptable because Dr. McArdle's prior methodology was "early in his career," and therefore Dr. McArdle was not bound by that methodology here. Op. at 7. In fact, Dr. McArdle's studies in Buffalo and Queens, New York were performed in the early 1980s, 15 years into Dr. McArdle's more than 45 year career. McArdle Feb. 28, 2013 Dep. at 256:12 – 258:2, attached hereto as Exhibit F. The rationale of the Magistrate Judge's holding to allow Dr. McArdle to testify is

6

clearly erroneous. *Reynolds v. Tangherlini*, 737 F.3d 1093, 1104 (7th Cir. 2013) (providing that clear error requires a firm and definite conviction that a mistake was made).

**C. Dr. McArdle Lacks the Qualifications to Opine as to a Less Discriminatory Alternative.**

**1. No Knowledge of EEOC Guidelines**

Additionally, although Dr. McArdle referred to pre-hire physical training as "a less discriminatory alternative to Chicago's PAT use without training," McArdle Declaration ¶ 21, he lacks the qualifications to offer such an opinion. There is no dispute that the requirement for Plaintiffs to offer an equally effective but less discriminatory alternative derives from the Uniform Guidelines on Employee Selection issued by the Equal Employment Opportunity Commission (the "Uniform Guidelines of the EEOC" or "Guidelines") in 1978. *Banos v. City of Chicago,* 398 F. 3d 889, 892 (7th Cir. 2005). The Uniform Guidelines of the EEOC makes the concept of a "less discriminatory alternative" both a legal concept and term of art in the field of industrial psychology. These Guidelines are the foundation upon which an opinion of "less discriminatory alternatives" must be based. Yet, in his deposition, Dr. McArdle admitted that he, Plaintiffs' proposed testifying expert, had no knowledge of these critical Guidelines:

> Q: So when you use the phrase less discriminatory alternative, is that a term of art?
> Ms. Malone: Object to the form of the question.
> A: By term of art, what do you mean?
> Q: Are you aware of whether there is a legal phrase less discriminatory alternative that's at issue in this case?
> A: No. I try to stay away from legal terms. That may be a legal term, but I didn't mean it as a legal term.
> Q: Are you familiar with the Uniform Guidelines of the EEOC for physical – for training programs?
> Ms. Malone: Object to the form of the question. Form. Foundation.
> A: No. I'm not familiar with it.

Exhibit F, Dr. McArdle April 23, 2013 Dep. at 261:16 – 262:10. Dr. McArdle then testified that he meant that he believed that training would reduce adverse impact on the paramedic PAT, but

7

he did not mean that any such reduction would be statistically significant, and admitted that he had not performed a statistical study related to this opinion. *Id.* at 262:14 – 263:5. The Magistrate Judge clearly erred in not barring Dr. McArdle's opinion, given Dr. McArdle's admitted lack of knowledge of the Uniform Guidelines of the EEOC. The Magistrate Judge should have barred him from being allowed to testify that pre-hire training is a less discriminatory alternative, as that term is used in the Guidelines. Dr. McArdle lacks the foundation under Federal Rule of Evidence 702(b)-(d) to proffer such an opinion. This issue is significant because the Plaintiffs have the burden of showing that there was an equally valid but less discriminatory alternative to the paramedic PAT in 2004, if the City shows that the paramedic PAT was job related. *Banos*, 398 F. 3d at 892; *Allen v. City of Chicago*, 351 F.3d 306, 312 (7th Cir. 2003).

### 2. No Knowledge of Costs or Parameters

In addition, the Magistrate Judge clearly erred when he disregarded the record that Dr. McArdle's opinion that the City could have implemented a pre-hire physical training program "at minimal cost, relatively easy access for motivated candidates, with exceptional attendance, and impressive success," is not based on sufficient facts or data and is not the result of the application of a reliable methodology. Dr. McArdle acknowledged that he had no knowledge of what the cost or other parameters of such a 12-15 week physical training program would be for CFD paramedic applicants. Exhibit F, McArdle Feb. 28, 2013 Dep. at 270:15 – 272:9. Dr. McArdle performed no investigation of the number of applicants who would participate in such a program, how many trainers would be needed, or whether such trainers would be CFD employees or outside hires. Dr. McArdle could not even state the elements of his own speculative 12-15 week pre-hire training program, such as: whether it would be once a week for 90 minutes; three times a week for 60 minutes; or some other schedule? *Id.* These elements are

8

relevant because they drive costs. The Magistrate Judge clearly erred in allowing this "cost" opinion, because Dr. McArdle had no facts or data to determine costs to support this opinion.

Without information concerning the various parameters that could be involved in a pre-hire physical training program, Dr. McArdle's opinion concerning the potential cost of a pre-hire physical training program for the CFD paramedic PAT lacks any foundation. Neither Dr. McArdle nor the Magistrate Judge can identify upon what reliable method or information Dr. McArdle determined that a pre-hire training program is a "less discriminatory alternative." "Even in instances where a formal scientific method is not necessary, a purported expert must consider obviously relevant information in forming his opinion. . . . supposed 'expert' testimony cannot be a hunch or a gut feeling—it must be based on some specific data." *Klaczak v. Consolidated Medical Transport*, 458 F. Supp. 2d 622, 667 (N.D. Ill. 2006). Indeed, Dr. McArdle testified that whether the relative costs of doing a video, a brochure or pre-hire training were an issue for the City "was not an area of my expertise." Exhibit F, McArdle Feb. 28, 2013 Dep. at 253:13-20. Thus, Dr. McArdle's opinion that pre-hire training could be effectively implemented by the CFD at "minimal cost" is not based on sufficient facts or data as required by FRE 702(b). Also, as unsupported speculation, this opinion is not the product of a reliable methodology.

The Magistrate Judge clearly erred in failing to apply the gatekeeping function required under *Daubert*. Accordingly, the Order allowing Dr. McArdle to testify as an expert at trial should be reversed.

## CONCLUSION

The Magistrate Judge's statement that all of the deficiencies in Dr. McArdle's methodology can be cured through cross-examination ignores the gatekeeper function that a district court must uphold. The purpose of the district court's "gatekeeping function is to prevent

expert testimony from carrying more weight with the jury than it deserves." *United States v. Ozuna*, 561 F. 3d 728, 736 (7th Cir. 2009) (citations omitted). "Shaky" expert testimony can be challenged through cross-examination. However, *unreliable* testimony is inadmissible, and it is the very testimony that a district court, acting in its gatekeeping role, is charged with excluding. *Farmer v. DirectSat USA, LLC*, No. 08 CV 3962, 2013 WL 1195651, at *9 (N.D. Ill. Mar. 22, 2013) (citing *American Am. Honda Motor Co., Inc. v. Allen*, 600 F. 3d 813, 818-19 (7th Cir. 2010)), attached hereto as <u>Exhibit G</u>. In this case, as in *Farmer*, Dr. McArdle's failure to use scientific methods or to conduct any scientific analysis that would demonstrate the reliability of his methodology, particularly with regard to his discussion of so-called less discriminatory alternatives, renders his testimony not simply shaky, but unreliable.

Based on the errors explained above, by making factual errors and failing to consider whether Dr. McArdle employed reliable methodology, the Magistrate Judge's rulings fail under both the *de novo* and clearly erroneous review standards enumerated in Fed. R. Civ. P. 72. Accordingly, the Magistrate Judge's ruling denying the City's motion to bar Dr. McArdle should be set aside.

Dated: May 19, 2014

Respectfully submitted,
**THE CITY OF CHICAGO**

By:  /s/John F. Kennedy
       One of Its Attorneys

Timothy Swabb
Alison Alvarez
Assistants Corporation Counsel
30 N. LaSalle Street, Suite 1020
Chicago, IL 60602
312-744-8369

Allan T. Slagel (ARDC No. 6198470)
aslagel@taftlaw.com

10

1289174_4

Cary E. Donham (ARDC No. 6199385)
cdonham@taftlaw.com
John F. Kennedy (ARDC No. 6196185)
jkennedy@taftlaw.com
Rachel L. Schaller (ARDC No. 6306921)
rschaller@taftlaw.com
Elizabeth E. Babbitt (ARDC No. 6296851)
ebabbitt@taftlaw.com

TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive, Suite 2800
Chicago, IL 60601
312-527-4000