IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STACY ERNST, et al. | No. 08 c 4370 |
| Plaintiffs, | Judge Charles R. Norgle, Sr. |
| v. | Magistrate Judge Jeffrey Cole |
| CITY OF CHICAGO, | |
| Defendant. | |

**PLAINTIFFS' MOTION TO AMEND PRETRIAL ORDER WITH
NEWLY DISCLOSED CITY DOCUMENTS**

Plaintiffs Stacy Ernst et al by and through their undersigned counsel respectfully request leave to supplement the Pretrial Order with documents newly disclosed by the Defendant and in support thereof state:

## I. INTRODUCTION

In February, 2014, after the parties had exchanged extensive lists of proposed exhibits and witnesses, pretrial conferences were held over several days. The parties thereafter submitted and the Magistrate Judge entered the final pretrial order together with rulings on motions *in limine*.

In July 2014, the defendant produced documents in the matter of *Godfrey v. City of Chicago*, 12 C 8601. The *Godfrey* case alleges sex discrimination by the City of Chicago in administering a physical ability test in 2011. In that case, the City utilized a physical test developed in 1995 by the same persons who developed the test at issue in this case, albeit for firefighter applicants. Around the same time, after the completion of the pretrial conferences, the City produced a videotape which it sent to applicants for firefighter position, emphasizing the importance of early training for prehire physical performance test.

1

Plaintiffs seek leave to amend the pretrial order to add two of these documents - known to defendant but not available to the Ernst plaintiffs at the time of the pretrial conferences.

The pretrial order lists all of the documents identified by either party which the party may seek to utilize other than for impeachment or rebuttal. As the Defendant has acknowledged, the pretrial order was not intended to preclude or limit the use of other materials to impeach witnesses or for presentation during Plaintiffs rebuttal.

Rule 16 provides that generally, a party may not amend the list of exhibits except for "good cause" shown. The advisory committee comments to Fed .R. Civ. Pro. 16 states:

> Once formulated, pretrial orders should not be changed lightly; but total inflexibility is undesirable. *See e.g. Clark v. Pennsylvania R.R. Co.*, 328 F.2d 591(2d Cir. 1964). The exact words used to describe the standard used to amend the pretrial order are probably less important than the meaning given them in practice. By not imposing any limitation on the ability to modify a pretrial order, the rule reflects the reality that in any process of continuous management what is done at one conference may have to be altered at the next. In the case of the final pretrial order, however a more stringent standard is called for and the words "to prevent manifest injustice" which appeared in the original rule have been retained. They have the virtue of familiarity and adequately describe the restraint the trial judge should exercise.

Notes of Advisory Committee on 1983 Amendments, page 51. Permitting an amendment to the pretrial order is appropriate where the movant establishes good cause for the change; the amendment will cause no undue prejudice to the non-movant and will not unduly disrupt the trial. *Janopoulus v. Walner & Associates*, 1995 U.S. Dist. Lexis 5225 (N.D. Ill. 1995) (Coar, J) (permitting addition of witness). In the present circumstances, permitting the addition of these two exhibits will cause minimal prejudice to defendant and is necessary to prevent manifest injustice to plaintiffs.

II.  **AMENDMENT OF THE PRETRIAL ORDER TO INCLUDE CFD DOCUMENTS CONCERNING TRAINING AND NOTICE TO APPLICANTS WOULD IMPOSE NO UNDUE HARDSHIP OR PREJUDICE UPON DEFENDANT.**

This case addresses a prehire physical test administered to these plaintiffs in August 2004. The test was instituted in 2000 by the Defendant for licensed paramedics seeking hire as

548674.2

CFD paramedics. It is undisputed that prior to 2000, the defendant had no prehire physical test requirement for paramedics. Rather, licensed paramedics put their names on an eligibility list and were periodically called for further screening for hire. Notably, at no time did defendant ever seek to test the medical competence of paramedic applicants relying entirely upon their licensure and training for this purpose. There is no evidence that prior to the adoption of this test any paramedic particularly any female paramedic either failed training or failed to perform on the job. There is no evidence that any paramedic – male or female – was unable to perform the duties of the job or unable to lift or move patients in a safe, unhurried manner before the adoption of this test.

There is evidence that the one thing the vendor promised the defendant was that adoption and use of this test would adversely impact female paramedics i.e. the one promised results was that use of this test would reduce the number of women the CFD hired as paramedic.

It is further undisputed that the defendant hired HPS and Dr. Deborah Gebhardt to develop this test, in substantial part because of the good relationships she had developed with top CFD brass from her work in conjunction with Dr. Mark Sothman on the prehire test for those seeking hire as firefighters or firefighter/EMTS. That test was developed in 1994-5 and was utilized by CFD from 1996 through 2006 when it was modified slightly.

One important set of issues in the present case involve the nature, quality and timing of information about the test provided applicants in advance of the test date. HPS and Dr. Gebhardt had advised CFD that all of their tests would have an adverse impact upon female applicants. In the case of the paramedic test, Gebhardt recommended preparation of a video in part to parallel the material provided firefighter applicants as well as a training program to reduce adverse impact. CFD rejected both and elected to provide a short brochure which it did not distribute until four weeks prior to the test administration.[1]

---

[1] At some later date, CFD did commission a short video but this was shown to applicants only on the actual test date, i.e. not in advance to permit the applicants to prepare for the test.

In this case, Gebhardt and the City's other expert Dr. Jacobs, both of whom acknowledge recommending and offering training programs to their clients nevertheless questioned whether the product they offered was appropriate or worked.

Documents and materials recently produced in the matter of *Godfrey v. City of Chicago*, 12 C 8601 confirm that long before the administration of the test to paramedic applicants, CFD was informing candidates that it was important to begin preparing for the physical test months in advance to maximize chances of success.

In 1996, the CFD sent over 600 letters to those who scored well on the written firefighter exam. In those letters, CFD emphasized the importance of beginning preparation for the physical test immediately. CFD directed these applicants to an hour long video detailing the test and the manner of preparing for the test. CFD told applicants that it was extremely important that they begin this preparation immediately and directing them to a one hour videotape, stating:

> Because we believe that it is extremely important for you to view this 1 hour videotape so that you know how to train for the Physical Abilities Test and what to expect when you take it, we have made arrangements to have it available in several alternative ways.

(Ex. A, Proposed Plaintiffs Exhibit 94, CFD00020155-6).

The video tape and narrative further repeatedly emphasizes the importance of preparation and the fact that performance on the test will improve following months of training. On the video tape, the City's expert Dr. Sothman and the accompanying narrative by CFD personnel states repeatedly that training over the course of several months will improve performance on and one's chances of passing the physical abilities test. (Ex. B, Proposed Plaintiffs Exhibit 95, CFD 4157).[2]

Use of these materials is directly relevant to the alternatives available and known to CFD at the time it adopted and/or during the time it continued to utilize the test at issue in this case.

---

[2] Because the actual video is difficult if not impossible to efile, plaintiffs attach a copy of the cover of the video and are providing a copy of the full video as part of the courtesy copies.

Permitting this amendment will cause no undue prejudice to defendant in that the City has long been aware of these materials and its past practice. Not permitting the use of these materials will result in manifest injustice to plaintiffs in that it will permit defendant to hide from the Court and jury its prior practice and knowledge of the importance of providing sufficient time and instruction prior to physical prehire tests.

For the reasons stated herein, plaintiffs respectfully request leave to amend the pretrial order to add two additional exhibits.

Dated: September 10, 2014          Respectfully submitted,

    /s/ David Borgen
SUSAN P. MALONE
smalonelaw@sbcglobal.net
20 N. Clark Street, Suite 1725
Chicago, IL 60602
(312) 726-2638

DAVID BORGEN, CA Bar No. 099354
dborgen@gbdhlegal.com
Goldstein, Borgen, Dardarian & Ho
300 Lakeside Drive, Suite 1000
Oakland, CA 94612
(510) 763-9800; (510) 835-1417 (Fax)

MARNI WILLENSON
marni@willensonlaw.com
542 S. Dearborn Street, Suite 610
Chicago, IL 60605
(312) 546-4910; (312) 261-9977 (Fax)

Attorneys for Plaintiffs

548674.2

# Exhibit A

**FIREFIGHTER EXAMINATION #39501**

January 1996

Dear Applicant:

Your score on the written/video phase of the Chicago Firefighter Examination #39501 placed you in the Well-Qualified category, making you eligible to participate in the Physical Abilities Test. This Test consists of an arm lift task, an arm ergometer task, and a hose drag/high-rise carry task. The Test will be scheduled by the Chicago Fire Department and will be administered and scored by independent consultants. The Test will be given periodically at the Fire Academy during the next several years. You will be notified by mail when your name is reached for this Test. Therefore, it is important that you notify both the City of Chicago Department of Personnel and the Chicago Fire Department-Personnel Division, in writing, of any name or address change.

Physical Ability Assessment, Inc. has been retained by the City of Chicago to administer and score the Physical Abilities Test. As part of that process, a videotape and a brochure have been produced by Physical Ability Assessment, Inc. to aid you in preparing for the physical testing. The enclosed brochure describes those physical tasks that you must perform. The videotape describes general exercises to achieve overall physical fitness and the specific physical tasks you will be expected to perform.

The videotape and brochure also describe an aerobic fitness test that will be administered as part of the medical examination. NOTE: The aerobic fitness test will **not** be administered as part of the Physical Abilities Test. Only those applicants who pass the Physical Abilities Test, the background check and the drug screen, and who receive conditional offers of employment, will be given the medical examination and aerobic fitness test.

Because we believe that it is extremely important for you to view this 1-hour videotape so you know how to train for the Physical Abilities Test and what to expect when you take it, we have made arrangements to make it available in several alternative ways:

- The videotape will be shown at the Video Theater, on the Lower Level of the Harold Washington Library, 400 South State Street, on the <u>second Wednesday of every month</u> at 10:00 a.m.

- The videotape will be shown on Chicago Access Cable channels 23 and 49 <u>every Thursday</u> at 2:00 p.m.

- You may purchase your own copy of this videotape from the City of Chicago Department of Revenue, Room 107, City Hall, 121 North LaSalle Street, for $3.00.

Physical Ability Assessment, Inc. will review the physical testing videotape with you on the day you report for testing. Any questions pertaining to the procedures for testing will be answered at that time.

The Physical Abilities Test and exercises described in the videotape and brochure are physically strenuous. There will be no monitoring of your medical or physical condition in preparation for or during the Physical Abilities Test. The individuals administering the tests will not have information on your medical condition. Therefore, you will be required to sign an informed release indicating that you have reviewed the videotape and written materials, that you understand the nature of the tests and their risks, and that you voluntarily accept those risks. This form also will contain a statement releasing the City of Chicago and its consultants from any liability in the event you are injured as a result of any of these tests.

In addition, a Physician's Medical Release Form will be sent to you when you are notified to appear for the Physical Abilities Test. You will be required to have this form signed by your physician, certifying that you are able to participate in this Test. You must bring this signed form with you when you report for your Physical Abilities Test; you will not be permitted to participate in the Physical Abilities Test if you do not submit this signed form.

You should be aware that you can terminate the physical testing at any time if you are concerned about your safety or health.

Mark Sothmann, Ph.D.
Physical Ability Assessment, Inc.

City of Chicago
Fire Department

City of Chicago
Department of Personnel

# Exhibit B



CFD0004157

12-CV-8601