IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

STACY ERNST, DAWN HOARD, IRENE
RES-PULLANO, MICHELLE LAHALIH, and
KATHERINE KEAN,

          *Plaintiffs*,

    v.

CITY OF CHICAGO,

          *Defendant*.

Case No.: 08 C 4370

Judge Charles R. Norgle, Sr.

Magistrate Judge Jeffrey Cole

**CITY OF CHICAGO'S PROPOSED FINDINGS OF FACT
AND CONCLUSIONS OF LAW AS TO LOST WAGE EVIDENCE**

The City of Chicago (the "City") denies that it discriminated against Plaintiffs. However, in the event the Court finds that the City engaged in an unlawful hiring practice, the Court may, as it deems appropriate, order an award of backpay to Plaintiffs. 42 U.S.C. § 2000(e)-5(g)(1). To the extent the proofs presented at trial differ from the proposed findings and conclusions presented herein[1], the City requests leave to present Amended Findings of Facts and Conclusions of Law as to Lost Wage Evidence to conform to the proofs. Accordingly, assuming the Court finds for Plaintiffs on their claims of disparate impact, the City proposes the following findings of fact and conclusions of law regarding awards of backpay:

---

[1] The City has attached hereto the Plaintiffs' exhibits as provided by Plaintiffs at the time of the final pre-trial conference, on which it relies in its proposed Findings of Fact.

**PROPOSED FINDINGS OF FACT[2]**

### A. Procedural History

1.      In their Complaint, Plaintiffs allege claims of disparate impact on female applicants, in violation of Title VII, against the City, through the use of its physical abilities test ("PAT") employed by the Chicago Fire Department ("CFD") to select CFD Paramedics.

2.      Plaintiffs received $_____ in the settlement of claims filed in the Illinois Commission on Human Rights, arising out of the same facts and circumstances as Plaintiffs' disparate impact claim in this case.[3]

3.      Plaintiffs alleged that, as a result of the City's actions, Plaintiffs were not hired as CFD Paramedics and have sustained lost wages and other benefits of employment.

4.      In addition to a jury trial held on November 4, 2014 through November __, 2014, to adjudicate Plaintiffs' claim of intentional discrimination, the Court also conducted a bench trial to decide Plaintiffs' claim of disparate impact under Title VII.

5.      The Court, having found Plaintiffs met their evidentiary burden to prove the City liable on the basis of disparate impact, has determined that Plaintiffs are entitled to an award of backpay for lost wages as CFD Paramedics.

### B. Calculation of Lost Wages Based on Governing Collective Bargaining Agreements

6.      The salary of a CFD Paramedic is governed by the Collective Bargaining Agreements ("CBAs") between the City and the Chicago Fire Fighters Union, Local No. 2.

---

[2] To the extent, if any, that Findings of Fact, as stated, may be considered Conclusions of Law, they shall be deemed Conclusions of Law. Likewise, to the extent, if any, that Conclusions of Law, as stated, may be considered Findings of Fact, they shall be so deemed.

[3] To date, Plaintiffs have not disclosed the amount of their settlement. Therefore, the City is unable to identify a specific set-off amount, but reserves the right to supplement the record in this regard.

7.        There are three CBAs that govern the relevant time period of this action: (1) the CBA effective July 1, 2003 through June 30, 2007 ("2003 CBA"); (2) the CBA effective July 1, 2007 through June 30, 2012 ("2007 CBA"); and (3) the CBA effective July 1, 2012 through June 30, 2017 ("2012 CBA"). The relevant portions are attached hereto as Group Exhibit A. Each of these CBAs was received into evidence.

8.        Under Section 4.1 of each of the CBAs, CFD Paramedics are assigned platoon duty shifts. *See* Group Exhibit A.

9.        According to the CBAs, Appendix B - Salary Schedules, a CFD Paramedic is paid a salary under the Firefighters and Paramedic Rate, which is designated as F1 on the Salary Schedule. *See* Group Exhibit A.

10.        But for the City's actions, Plaintiffs Hoard and Lahalih would have been hired by the City as CFD paramedics on June 1, 2005.

11.        According to the 2003 CBA Appendix B, Plaintiffs Hoard and Lahalih would have earned an F1 base salary totaling $25,199.00 from June 1, 2005 through December 31, 2005; and an F1 base salary $50,947.50 in 2006. *See* Group Exhibit A.

12.        According to Appendix B in the 2003 CBA and the 2007 CBA, Plaintiffs Hoard and Lahalih would have earned a base salary of $59,445.50 in 2007. *Id.*

13.        According to the 2007 CBA Appendix B, Plaintiffs Hoard and Lahalih would have earned a base salary of $64,693.00 in 2008; $69,248.00 in 2009; $73,164.00 in 2010; and $74,628.00 in 2011. *Id.*

14.        According to Appendix B in both the 2007 CBA and 2012 CBA, Plaintiffs Hoard and Lahalih would have earned a base salary of $76,125.00 in 2012. *Id.*

15.     According to the 2012 CBA Appendix B, Plaintiffs Hoard and Lahalih would have earned a base salary of $78,414.00 in 2013. *Id.*

16.     In 2014 through October 31, 2014, Plaintiffs Hoard and Lahalih would have earned a base salary of $66,650.00, under the 2012 CBA Appendix B. *Id.*

17.     The calculation of the lost base pay of Plaintiffs Hoard and Lahalih, employing a June 1, 2005 start date, under the relevant CBAs, is demonstrated in the chart attached hereto, labeled "Chart 1 – Calculation of Hoard and Lahalih Base CFD Pay." *See* Group Exhibit B – Chart 1.

18.     In addition, but for the City's actions, Plaintiffs Ernst, Kean, and Res would have been hired by the City as CFD paramedics on January 1, 2006.

19.     According to the 2003 CBA Appendix B, Plaintiffs Ernst, Kean, and Res would have earned an F1 base salary totaling $44,838.00 in 2006. *See* Group Exhibit A.

20.     According to Appendix B of the 2003 CBA and 2007 CBA, Plaintiffs Ernst, Kean, and Res would have earned an F1 base salary totaling $57,606.00 in 2007. *See* Group Exhibit A.

21.     According to the 2007 CBA Appendix B, Plaintiffs Ernst, Kean, and Res would have earned an F1 base salary totaling $62,847.00 in 2008; $67,338.00 in 2009; $71,406.00 in 2010; and $74,628.00 in 2011. *Id.*

22.     According to Appendix B of the 2007 CBA and the 2012 CBA, Plaintiffs Ernst, Kean, and Res would have earned an F1 base salary totaling $76,125.00 in 2012. *Id.*

23.     According to the 2013 CBA Appendix B, Plaintiffs Ernst, Kean, and Res would have earned an F1 base salary totaling $78,414.00 in 2013. *Id.*

24.     In 2014 through October 31, 2014, Plaintiffs Hoard and Lahalih would have earned an F1 base salary of $66,650.00, under the 2012 CBA Appendix B.  *Id.*

25.     The calculation of the lost base pay of Plaintiffs Ernst, Kean, and Res, assuming a January 1, 2006 start date, under the relevant CBAs, is demonstrated in the chart attached hereto, labeled "Chart 2 – Calculation of Ernst, Kean, and Res Base CFD Pay."  *See* Group Exhibit B – Chart 2.

26.     Had Plaintiffs been hired as CFD paramedics, Plaintiffs also would have been entitled to ALS Ambulance Driver Pay.  Section 16.10 of each of the governing CBAs addresses ALS Ambulance Driver Pay, and provides that, effective January 1, 2006, "[t]he Employer shall pay the ALS Ambulance Drivers . . . at the employee's next pay step.  It is provided, however, that such drivers' pay for employees at step 6 and over shall be no less than the monetary equivalent of the percentage (%) difference between Appendix B, steps 5 and 6."  *See* Group Exhibit A.

27.     Accordingly, under each of the governing CBAs, Plaintiffs Hoard and Lahalih are entitled to the following in ALS Ambulance Driver Pay per year:  $5,749.50 in 2006; $3,053.00 in 2007; $3,199.00 in 2008; $3,480.00 in 2009; $3,516.00 in 2010; $3,588.00 in 2011; $3,660.00 in 2012; $3,768.00 in 2013; and $3,200.00 in 2014, from January 2014 through October 31, 2014.  *Id.*

28.     The calculation of the ALS Driver pay of Plaintiffs Hoard and Lahalih, assuming a June1, 2005 start date, under the relevant CBAs, is demonstrated in the chart attached hereto, labeled "Chart 3 – Calculation of Hoard and Lahalih ALS Driver Pay."  *See* Group Exhibit B – Chart 3.

29.     Under each of the governing CBAs, Plaintiffs Ernst, Kean, and Res are entitled to the following in ALS Ambulance Driver Pay per year:  $9,798.00 in 2006; $3,117.00 in 2007; $3,171.00 in 2008; $3,360.00 in 2009; $3,516.00 in 2010; $3,588.00 in 2011; $3,660.00 in 2012; $3,768.00 in 2013; and $3,200.00 in 2014, from January 2014 through October 31, 2014.  *See* Group Exhibit A.

30.     The calculation of ALS Driver pay of Plaintiffs Ernst, Kean, and Res, assuming a January 2006 start date, under the relevant CBAs, is demonstrated in the chart attached hereto, labeled "Chart 4 – Calculation of Ernst, Kean, and Res ALS Driver Pay."  *See* Group Exhibit B - Chart 4.

31.     Had Plaintiffs been hired as CFD Paramedics, Plaintiffs would also have been entitled to Duty Availability Pay, which is governed by Section 5.7 of each of the relevant CBAs.  *See* Group Exhibit A.

32.     The amount of Duty Availability Pay is dictated in Section 5.7 each of the CBAs, and provides that CFD Paramedics are entitled to quarterly payments in accordance with the following effective dates and amounts:

| Effective Payment Date | Amount Per Quarter |
| --- | --- |
| January, 2004 | $300.00 |
| January, 2006 | $350.00 |
| July, 2007 | $688.00 |
| January, 2011 | $713.00 |
| January, 2012 | $805.00 |
| January, 2014 | $855.00 |

*See* Group Exhibit A.

33.     Assuming each of the Plaintiffs would have been entitled to earn Duty Availability Pay beginning in 2006, under the CBAs, each Plaintiff would earned the following in Duty Availability Pay for each of the following years: $1,400.00 in 2006; $2,076.00 in 2007;

$2,752.00 every year in 2008, 2009, and 2010; $2,852.00 in 2011; $3,220.00 every year in 2012 and 2013, and $2,850.00, from January 2014 to October 31, 2014.

34.     The calculation of Plaintiffs' Duty Availability pay, under the relevant CBAs, is reflected in the chart attached hereto, labeled "Chart 5 – Calculation of Plaintiffs' Duty Availability Pay." *See* Group Exhibit B – Chart 5.

35.     Had Plaintiffs been hired as CFD Paramedics, they would have also been entitled to a Protective Gear and Clothing Allowance.  Under Section 16.9(B) of the CBAs, "[e]ffective January 1, 2004, all platoon employees will receive the sum of $1,050.00 per year, $525.00 payable on or before March 1, 2004 and $525.00 payable on or before September 1, 2004. Effective January 1, 2006, all platoon employees will receive the sum of $1,250.00 per year, $625.00 payable on or before March 1, 2006 and $625.00 payable on or before September 1, 2006. After the March 1, 2007 payment . . ." EMS platoon employees were not paid a protective gear and clothing allowance.  *See* Group Exhibit A.

36.     Therefore, under the terms of the CBAs, each Plaintiff would have received a Protective Gear and Clothing Allowance payment $1,250.00 in 2006, and a $625.00 Protective Gear and Clothing Allowance in 2007.

37.     The CFD Base Pay, ALS Driver Pay, Duty Availability Pay, and Protective Gear and Clothing Allowance together make up the annual lost wages Plaintiffs would be entitled to under the governing CBAs.  The calculation of Plaintiffs' Total Lost CFD Wages, per year, is reflected in Charts 6A and 6B, attached hereto, entitled "Total Lost Wages for Plaintiffs Ernst, Kean, and Res Assuming January 2006 Start Date" and "Total Lost Wages for Plaintiffs Hoard and Lahalih Assuming June 2005 Start Date," respectively.  *See* Group Exhibit B – Chart 6A and 6B.

7

38.     Based on the calculations provided by the terms of the governing CBAs, the total

lost CFD wages per year for Plaintiffs Ernst, Kean and Res amount to the following:

| FISCAL YEAR | ERNST, KEAN, AND RES TOTAL LOST CFD WAGES PER YEAR |
|---|---|
| 2006 | $          57,286.00 |
| 2007 | $          63,424.00 |
| 2008 | $          68,770.00 |
| 2009 | $          73,450.00 |
| 2010 | $          77,674.00 |
| 2011 | $          81,068.00 |
| 2012 | $          83,005.00 |
| 2013 | $          85,402.00 |
| 2014 to Date | $          72,533.33 |

39.     Based on the calculations provided by the terms of the governing CBAs, the total

lost CFD wages per year for Plaintiffs Hoard and Lahalih amount to the following:

| FISCAL YEAR | HOARD AND LAHALIH TOTAL LOST CFD WAGES PER YEAR |
|---|---|
| 2005 | $          25,199.00 |
| 2006 | $          59,347.00 |
| 2007 | $          65,199.50 |
| 2008 | $          70,644.00 |
| 2009 | $          75,480.00 |
| 2010 | $          79,432.00 |
| 2011 | $          81,068.00 |
| 2012 | $          83,005.00 |
| 2013 | $          85,402.00 |
| 2014 to Date | $          72,700.00 |

**C. Computation of Plaintiffs' Interim Earnings**

40.     In calculating the full amount of the backpay award each Plaintiff is entitled to,

the Court nets the total of interim earnings proven by Plaintiffs against the amount of total lost

CFD wages each Plaintiff would have earned, but for the disparate impact.

8

41.     Plaintiffs' proofs of interim earnings are based on the evidence received at trial, identified as Plaintiffs' Exhibits 33-37.[45]   Plaintiffs' interim earnings, as supported by their Exhibits 33-37, are detailed below:

| FISCAL YEAR | Amount Earned by Stacy Ernst in Substitute Employment Based on Supporting Evidence in Pls.' Ex. 33 | Amount Earned by Dawn Hoard in Substitute Employment Based on Supporting Evidence in Pls.' Ex. 35 | Amount Earned by Katherine Kean in Substitute Employment Based on Supporting Evidence in Pls.' Ex. 37 |
|---|---|---|---|
| 2005 | NONE | UNKNOWN - Insufficient Records In Evidence | No Claim of Backpay Award in 2005 |
| 2006 | $ 48,740.07 | $ 38,171.44 | UNKNOWN - Insufficient Records In Evidence |
| 2007 | UNKNOWN - Insufficient Records In Evidence | $ 39,366.99 | $ 51,138.49 |
| 2008 | UNKNOWN - Insufficient Records In Evidence | $ 37,724.46 | UNKNOWN - Insufficient Records In Evidence |
| 2009 | UNKNOWN - Insufficient Records In Evidence | UNKNOWN - Insufficient Records In Evidence | UNKNOWN - Insufficient Records In Evidence |
| 2010 | UNKNOWN - Insufficient Records In Evidence | UNKNOWN - Insufficient Records In Evidence | UNKNOWN - Insufficient Records In Evidence |
| 2011 | $ 62,898.58 | UNKNOWN - Insufficient Records In Evidence | UNKNOWN - Insufficient Records In Evidence |
| 2012 | $ 66,240.83 | UNKNOWN - Insufficient Records In Evidence | $ 59,282.87 |
| 2013 | $ 71,946.57 | UNKNOWN - Insufficient Records In Evidence | UNKNOWN - Insufficient Records In Evidence |
| 2014 - TO DATE | UNKNOWN - Insufficient Records In Evidence | UNKNOWN - Insufficient Records In Evidence | UNKNOWN - Insufficient Records In Evidence |

[4]  Copies of these exhibits are attached hereto as Group Exhibit C.  See Feb. 25, 2014 P.M. Pretrial Conf. Tr. at 110:5 – 113:15, attached hereto as Exhibit D (discussion of exhibits before the jury and the Court; with Plaintiffs' counsel describing Exhibits "33 to 37 [as] the interim wage statements for each of the individual plaintiffs.").

[5]  At 4:05 p.m. on October 31, 2014, the date on which the Court directed the parties to file Proposed Findings of Fact and Conclusions of Law regarding their interim earnings, Counsel for Plaintiffs sought to provide "new" Exhibits 33-37, which "include more recent W-2s and mitigation documents re Plaintiffs' damages."   See Oct. 31, 2014 e-mail from D. Borgen to City Counsel, attached hereto as Exhibit E.  These Exhibits are different than the trial exhibits previously provided to the Court and to the City.  The City objects to this untimely attempt to replace documents, particularly as the City has had no opportunity to review these documents, and as it is unclear if these documents have ever been previously produced by Plaintiffs.

9

| FISCAL YEAR | Amount Earned by Michelle Lahalih in Substitute Employment Based on Supporting Evidence in Pls.' Ex. 36 | Amount Earned by Irene Res-Pullano in Substitute Employment Based on Supporting Evidence in Pls.' Ex. 34 |
|---|---|---|
| 2005 | *UNKNOWN - Insufficient Records In Evidence* | *No Claim of Backpay Award in 2005* |
| 2006 | $ 32,309.00 | $ 44,780.00 |
| 2007 | $ 26,959.00 | $ 23,648.00 |
| 2008 | *UNKNOWN - Insufficient Records In Evidence* | $ 40,321.04 |
| 2009 | $ 55,154.00 | $ 47,654.45 |
| 2010 | $ 59,507.34 | $ 48,402.57 |
| 2011 | $ 55,534.59 | $ 49,692.00 |
| 2012 | *UNKNOWN - Insufficient Records In Evidence* | $ 51,272.84 |
| 2013 | *UNKNOWN - Insufficient Records In Evidence* | $ 50,139.08 |
| 2014 - TO DATE | *UNKNOWN - Insufficient Records In Evidence* | *UNKNOWN - Insufficient Records In Evidence* |

42.     The calculation of Plaintiffs' Total Lost CFD Wages, per year, is reflected in Chart 7, attached hereto, entitled "Total Award of Backpay Per Plaintiff."

## PROPOSED CONCLUSIONS OF LAW

### A.  The Remedy of Backpay Is An Award Granted At the Discretion of the Court

1.      Backpay is a remedy a court may award, in its discretion, to make whole a victim of discrimination.  *See Geraty v. Village of Antioch*, 09 C 6992, 2014 WL 1475574, at \*1 (N.D. Ill. April 15, 2014).

2.      It is the obligation of the court to calculate backpay, which is prepared by measuring the difference between the plaintiff's actual earnings for a period of time with those earnings the plaintiff would have earned, absent discrimination by the defendant, in the same period of time.  *Id.*

3.      Plaintiffs who seek an award of backpay are obligated to put forth evidence of both economic loss *and* other wages earned in mitigation.  *Koerber v. Journey's End, Inc.*, 99 C 1822, 2004 WL 723850, at \*12 (N.D. Ill. Mar. 31, 2004).

### B.  Plaintiffs' Awards of Backpay Are Based on Their Evidentiary Support.

4.      A "[p]laintiff is required to establish the amount of damages she seeks."  (*Id.*)

5.      Accordingly, Plaintiffs must provide a clear record of interim wages received in alternate employment.  "It is only with such information that the trial court can carry out its responsibility to reduce the back pay award by the amount of 'interim earnings.'"  *Taylor v. Philips Industries, Inc.*, 593 F.2d 783, 787 (7th Cir. 1979) (citing 42 U.S.C. § 2000e-5(g)) (reversing and remanding a district award of backpay where the record was incomplete on the plaintiffs' interim earnings.).

6.      In support of Plaintiffs' claim for backpay awards, Plaintiffs put forth what they had identified at the Pretrial Conference as Plaintiffs' Exhibits 33-37.  *See* Group Exhibit C. Each exhibit purports to be evidence of each of the respective Plaintiffs' earnings for the relevant time period.

7.     However, for many of the years of interim earnings in question, Plaintiffs failed to provide the Court with sufficient records, reflecting how much Plaintiff earned in a given year. Some years' records, as incorporated in Plaintiffs' Exhibit 33-37, were wholly illegible or simply missing from the Exhibit entirely. *See* Group Exhibit C.

8.     Accordingly, for each of the years a given Plaintiff failed to submit into evidence a clear record that reflected her interim earnings in substitute employment, Plaintiff is not entitled to an award of backpay for that year. *See Koerber*, 2004 WL 723850, at \*12 (declining to award backpay where plaintiff failed to "properly establish the amount of backpay to which she may be entitled" by failing to "show how much she earned" in replacement jobs, therefore making it "impossible to determine if she earned more or less than what she would have earned at [defendant].").

9.     Plaintiffs Ernst, Kean, and Res, but for the City's actions, would have commenced their employment as CFD Paramedics on June 1, 2005, the most common start date of 2004 PAT candidates, as reflected in Plaintiffs' Exhibit 45. As Plaintiffs Hoard and Lahalih make no claim to a backpay award in 2005 (nor provide any supporting evidence), Plaintiffs Hoard and Lahalih, but for the City's actions, would have been employed as CFD Paramedics on January 1, 2006.

10.     Plaintiffs failed to put forth any evidence demonstrating that, had they been hired in June 2005 or January 2006 as CFD paramedics, they would have been entitled to promotions within the CFD, and that they would have accepted such promotions. Plaintiffs further have failed to provide evidence detailing how such promotions in ranks are handled by the CFD. Therefore, Plaintiffs' backpay awards do not account for lost pay associated with promotions in rank.

11.     Plaintiffs failed to put forth any evidence demonstrating that, had they been hired as CFD paramedics, they would have been entitled to and would have earned overtime pay. Plaintiffs further fail to provide support detailing the calculation of any such overtime pay. Therefore, Plaintiffs' backpay awards do not include compensation for lost overtime pay.

12.     Similarly, Plaintiffs have failed to put forth evidence demonstrating that they are entitled to lost pension benefits, or the underlying calculation for such benefits. Accordingly, Plaintiffs' awards of backpay do not include compensation for lost pension benefits. *See Daniels v. Pipefitters' Ass'n Local Union No. 597*, 945 F.2d 906, 925 (7th Cir. 1991) (affirming district court's denial of lost pension benefits in backpay award where the governing CBA "provide[d] no mechanism for calculating this amount, and the plaintiff produced no evidence to substantiate his claim.").

13.     Plaintiffs' awards for backpay do not contemplate compensation for lost insurance benefits. To recover a lost insurance benefit as part of backpay, "a plaintiff must show that she either incurred expenses in securing alternative insurance coverage or incurred medical expenses that would have been covered under the employer's insurance program." *United States EEOC v. Custom Companies, Inc.*, Nos. 02 C 3768, 03 C 2293, 2007 WL 734395, at *14 (N.D. Ill. March 8, 2007). Plaintiffs put forth no such evidence.

14.     Plaintiffs are entitled to prejudgment interest, applying the prime rate for the years in question, compounded monthly. The parties are directed to update the prejudgment interest calculation on this basis and provide the Court an agreed calculation within 21 days upon entry of judgment on Plaintiffs' claims of disparate impact. *See Geraty*, 2014 WL 1475574, at *3.

15.      As a result of the City's actions, Plaintiffs are entitled to the following backpay awards: Plaintiff Stacy Ernst is awarded $56,934.95; Plaintiff Dawn Hoard is awarded

$79,927.61; Katherine Kean is awarded $36,007.64; Michelle Lahalih is awarded $131,062.57; and Plaintiff Irene Res is awarded $234,169.02 in backpay, in addition to the award of prejudgment interest, to be calculated as explained above.

16.    Plaintiffs' backpay award is reduced on a pro rata basis by $_____, the settlement amount Plaintiffs received relating to the Illinois Commission on Human Rights action on related facts. *See, e.g., Trustees of Chicago Painters and Decorators Pension, Health and Welfare and Deferred Sav. Plan Trust Funds v. Royal Int'l Drywall and Decorating, Inc*., 493 F.3d 782, 790 (7th Cir. 2007) (affirming district court's damages award where the court had reduced the amount of damages by the amount accounted for in a prior related settlement agreement).

17.    As a result of the City's actions, Plaintiffs are entitled to the following backpay awards: Plaintiff Stacy Ernst is awarded $56,934.95; Plaintiff Dawn Hoard is awarded $79,927.61; Katherine Kean is awarded $36,007.64; Michelle Lahalih is awarded $131,062.57; and Plaintiff Irene Res is awarded $234,169.02 in backpay, in addition to the award of prejudgment interest, to be calculated as explained above, less the set-off arising from Plaintiffs' settlement in the Illinois Commission on Human Rights.


Dated: October 31, 2014

Respectfully submitted,
**THE CITY OF CHICAGO**


By:   Cary E. Donham


Allan T. Slagel (ARDC No. 6198470)
aslagel@taftlaw.com
Cary E. Donham (ARDC No. 6199385)
cdonham@taftlaw.com
John F. Kennedy (ARDC No. 6196185)
jkennedy@taftlaw.com
Elizabeth E. Babbitt (ARDC No. 6296851)
ebabbitt@taftlaw.com
TAFT STETTINIUS & HOLLISTER LLP
111 East Wacker Drive, Suite 2800
Chicago, Illinois 60601
Telephone:  (312) 527-4000

Respectfully submitted,
**STEPHEN R. PATTON,**
Corporation Counsel of the City of
Chicago


By:   Steven R. Patton


Timothy Swabb
Alison Alvarez
Assistants Corporation Counsel
30 N. LaSalle Street, Suite 1020
Chicago, IL 60602
312-744-8369/4939

1309365.6

15